CORNELIA BOORAEM

v.

THE NORTH HUDSON COUNTY RAILWAY COMPANY.

Land dedicated for a highway does not, *ipso facto*, become a highway, and will not become so until the proper municipal authority has accepted it.

On motion for injunction, heard on bill and affidavits and answer and affidavits.

*Mr. J. Henry Stone,* for motion.

*Mr. John C. Besson, contra.*

VAN FLEET, V. C.

The defendants are engaged in constructing an elevated railroad from the Hoboken ferries, on the Hudson river, to Jersey City Heights. The complainant seeks to have them enjoined from constructing their road over and across certain lands conveyed by her for the use of the defendants. On the 21st of August, 1881, the complainant, for the consideration of $25,000, conveyed two tracts of land to John H. Bonn. Mr. Bonn was then, and is still, the president of the defendants, and it is an admitted fact that he took title to the lands in question for the defendants, and that they are the real owners of them. The deed made by the complainant contains a clause, immediately following the description of the lands conveyed, which reads as follows:

"Together with all the right, title and interest of the said party of the first part to the lands covered by Ogden and Palisade avenues, in front of the lands above described, subject to the easements of said avenues respectively; it being understood that Ogden avenue is extended, for the same width, across said premises, and dedicated as a public highway."

Ogden avenue runs from north to south, and its southerly

terminus, at the date of the conveyance, was at the northerly line of the lands conveyed by complainant to Mr. Bonn. It has not been opened across the lands so conveyed, nor accepted or recognized by the municipality of Jersey City, in any manner, as a public highway. The defendants commenced the construction of their works, on the lands acquired from complainant, in February, 1884. The bill in this case was not filed until August, 1884. The defendants intended to construct their road immediately above that part of the land which, by the deed from complainant, is dedicated for the extension of Ogden avenue, at an elevation of between six and eight feet above the natural surface of the earth. The complainant owns lands adjacent to those which she conveyed to Mr. Bonn, and did, at the date of her conveyance to him, which she believes have a large prospective value, but which can only be made accessible and desirable, as building sites, by the extension of Ogden avenue. They are now in their natural condition, being wholly unimproved, except enclosing them by a high board fence should be regarded as an improvement. The special grievance of which the complainant complains is, that if the defendants shall be permitted to construct their road at so slight an elevation above the surface of the earth, Ogden avenue will, at that point, be rendered useless as a public highway, and the purpose she had in view, in dedicating land for its extension, be entirely defeated, as the space between the defendant's structure and the earth beneath will be wholly insufficient for a highway. To prevent this result, the complainant asks that the defendants may be enjoined from constructing their road over the lands so dedicated, except they do so either on the surface, or at a sufficient elevation not to obstruct the safe and convenient use of the avenue as a public highway.

The defendants are in the rightful possession of the lands in controversy as its owners. It is manifest, therefore, that unless the use which they intend to make of it will deprive the complainant of some clear present right, to her irreparable injury, no ground for the exercise of the prohibitory power of the court is presented. A suitor, to entitle himself to the exercise of one of

the strongest and most delicate powers of the court, is invariably required to exhibit a case of urgent necessity growing out of a violation of a clear present right.

The land in question was unquestionably dedicated for the extension of Ogden avenue as a public highway. The language employed to manifest the intention of the parties in that regard is apt and unequivocal. But the rights thus created are public rights. When the use or purpose for which a dedication is made, is declared, the land cannot be used by the public for any other purpose. A private way cannot be created by dedication. *Methodist Church* v. *Hoboken, 4 Vr. 13.* The complainant, by her deed, completely stripped herself of all right to and interest in the land conveyed, and she stands now as bare of any private or individual right in the land as though she had never been invested with the title to it. The dedication created a public right, but no private or individual right. A dedication of land for the purpose of a highway does not, *ipso facto,* create a highway. "An individual," to state a well-established principle in the words of Chief-Justice Green, "cannot, at his pleasure, create public highways for his own benefit, upon his own land, and impose upon the public the burden of maintaining them." *Holmes* v. *Jersey City, 1 Beas. 299.* The public are no more compelled to accept land dedicated for a highway, than land-owners are obliged to dedicate their lands for that purpose. *Fisher* v. *Prowse, 2 B. & S. 770 ; 2 Smith's Lead. Cas. (5th Am. ed.) 163.* In many instances, perhaps in most, dedications are made long in advance of the time when the land will be needed for the purpose for which it is dedicated. Villages and cities are often projected on paper, and streets and parks laid out, where there is no population to use the streets or walk in the parks, and where none will exist for years after the land is set apart for public use. The public square, which the city of Hoboken recovered from a church corporation in 1868, was dedicated in 1804, and was used as a cow pasture as late as 1834. *Methodist Church* v. *Hoboken, 4 Vr. 13.* In order to complete a dedication of land for a public use there must be an acceptance by the public. Land dedicated for a public highway does not become a high-

way simply by force of the dedication, nor until the proper municipal authority has accepted the dedication, or in some way ratified it. *Pope* v. *Union, 3 C. E. Gr. 282; Attorney-General* v. *Morris and Essex R. R. Co., 4 C. E. Gr. 386; 2 Smith's Lead. Cas. (5th Am. ed.) 162; Washb. on Eas. 139.* In *Hoboken Land and Improvement Co.* v. *Hoboken, 7 Vr. 540,* it was said : "Acceptance by a formal adoption by the public authorities, or by public user, is necessary to impose on the public the duty to amend or repair, but it is not essential to the consummation of the dedication, so as to cut off the owner from the power of retraction, or to subject the dedicated lands to the public use, whenever, in the estimation of the local authorities, the wants or convenience of the public require them for the purpose for which they were dedicated." But until, in the judgment of the local authorities, they are required by the public, the person dedicating them, or their owner, may make any use of them he sees fit.

It is clear, then, in view of the legal rules above stated, that the land dedicated for the extension of Ogden avenue is not now subject to the easement of a public highway, and cannot become subject to such easement until the proper municipal authority decides that it is advisable to accept the dedication. At present, the construction of the defendant's road over the land in question will not, and cannot, injure or obstruct a public highway, for none exists there. Whether the dedication will ever be accepted or not, or a public highway will ever exist at the point in question or not, is an inquiry wholly immaterial at this time. The complainant, in order to entitle herself to the writ she asks, must show a clear present right; a doubtful or problematical right, possible to arise sometime in the future, affords her no standing whatever. If a public highway never exists at the point in question, she will never be entitled to have her use of it protected. If an injunction were to issue now, it would go to protect a right which does not exist, and which may never exist.

The injunction asked must be denied, and the complainant's bill will be dismissed, with costs.